IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 4:20-cr-00718-SAL-17 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| ALONZO LEE PIERCE, JR. | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court pursuant to Defendant Alonzo Lee Pierce, Jr.'s (Defendant) *pro se* Motion for Relief from Judgment, ECF No. 1301, Motion for Compassionate Release, ECF No. 1285, and Motion to Appoint Counsel ECF No. 1284. The government replied to the Motions, ECF Nos. 1311 and 1331, opposing Defendant's requests for compassionate release and relief from judgment. The court has considered the facts and law in relation to each of Defendant's motion, and the matter is now ripe for ruling.

**RELEVANT BACKGROUND**

In November 2020, a federal grand jury charged Defendant and twenty-five co-defendants in a twenty-nine count Indictment for their involvement in an illicit drug trafficking scheme in and around Horry County, South Carolina. [*See* ECF No. 3.] On March 25, 2021, Defendant pleaded guilty to conspiring to possess and distribute twenty-eight grams or more of cocaine base (also known as "crack cocaine"), in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). [*See* ECF Nos. 738, 796.] As part of his plea agreement, the government agreed to move the court for a downward departure or reduction of sentence pursuant to United States Sentencing Guidelines (U.S.S.G.) § 5K1.1, U.S.C. § 3553(e), or Federal Rule of Criminal Procedure 35(b), which would

1

not be binding on the court. [ECF No. 738 ¶ 9.] Defendant also agreed to waive his right to contest the conviction or sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. [*Id*. ¶ 14.] However, the waiver did not apply to claims of ineffective assistance of counsel, prosecutorial misconduct, or future changes in the law that affect Defendant's sentence. [*Id*.]

Under 21 U.S.C. §§ 841(a)(1), (b)(B), and 846, Defendant faced a statutory term of imprisonment between five and forty years. Under the 2018 Guidelines Manual, the United States Probation Office calculated Defendant's advisory guidelines range as 84 to 105 months based on a total offense level of 25 and a criminal history category of IV. [ECF No. 1003 at 4-5.] The Probation Office factored in a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm which was based on the statement of a confidential source. *Id*. Defendant filed an objection to the enhancement, asserting that "[t]he information . . . only reports that Mr. Pierce was seen with a gun" and that the information was "unclear," "[in]credible," and "insufficient" to sustain the enhancement in Defendant's guidelines. [ECF No. 867 at 10-11.]

In its Sentencing Memorandum, the government informed the court that the parties resolved Defendant's objection to the enhancement. [ECF No. 1003 at 4.] The government also petitioned the court for an unopposed one-level downward variance. *Id*. And the government petitioned the court under U.S.S.G. § 5K1.1 for another three-level departure, resulting in an adjusted guidelines range of 57 to 71 months and no mandatory minimum.[1] [ECF No. 1003 at 4-5.] The court accepted the government's motions for downward variance and sentenced Defendant to a 57-month term of imprisonment. [*See* ECF No. 1057.] Defendant is serving his sentence at Fort Dix FCI. [ECF No. 1285 at 11.]

---

[1] The government's recommended guidelines range of 57 to 71 months was based on an adjusted offense level of 21 and a criminal history category of IV. [ECF No. 1003 at 4-5.]

About seven months after his sentencing, Defendant filed Motions for Appointment of Counsel [ECF No. 1284], Compassionate Release [ECF No. 1285], and Relief from Judgment [ECF No. 1301]. Defendant subsequently submitted a Letter Re: Drug Benefits to supplement his Motion for Relief from Judgment. [ECF No. 1310.] The government filed responses in opposition to Defendant's Motion for Relief from Judgment and Motion for Compassionate Release. [ECF Nos. 1311, 1331.]

## DISCUSSION

### I. Defendant's Motion for Relief from Judgment

Defendant brings his Motion for Relief from Judgment under Rule 60(b)(6) or 28 U.S.C. § 2255, asking the court to amend his Presentence Investigation Report (PSR). [ECF No. 1301 at 4.] Defendant requests that the court redact "any [] information" in his PSR that precludes "credit and time off as reward for successful completion of the [Residential Drug Abuse Program (RDAP)]." [*Id*. at 1.] Specifically, Defendant seeks the redaction of the two-level firearm enhancement applied to his advisory guidelines calculation under U.S.S.G. § 2D1.1(b)(1) from his PSR because it "would make [him] eligible for early release." [*Id*. at 2-3; ECF No. 1310 at 1.] Defendant states that this court and the government "do not object to, and indeed likely intend," that Defendant receive "all benefits" from successfully completing the RDAP program. [ECF No. 1301 at 2.] Defendant further contends that the court not only recommended him to the RDAP program but "also" recommended that he "receive all benefits from the drug program." [ECF No. 1310 at 1.]

Contrary to Defendant's assertions, the government opposes Defendant's Motion on several grounds. First, the government argues that Rule 60 does not apply here. [ECF No. 1311 at 1.] Second, the government asserts that 28 U.S.C. § 2255 is unavailable because Defendant waived his right to collaterally attack his sentence and his present request falls outside the scope of claims

3

he negotiated to reserve. [*Id*. at 1-2.] Third, the government refutes Defendant's claim that his case warrants a change to his PSR for any "early release" benefit connected with the successful completion of the RDAP program. [*Id*. at 2.]

The court concludes that neither Rule 60(b)(6) nor 28 U.S.C. § 2255 provides Defendant mechanisms for relief, and Defendant does not have a viable claim that entitles him to any change to his PSR or release status.

**A.     Neither Rule 60(b)(6) nor 28 U.S.C. § 2255 provides a procedural avenue for relief.**

Defendant is not entitled to relief under Rule 60(b)(6) or 28 U.S.C. § 2255.[2] Federal Rule of Civil Procedure 60(b) provides that on motion and upon just terms, the court may relieve a party from a final judgment for five enumerated reasons or for "any other reason that justifies relief."[3] Fed. R. Civ. P. 60(b)(6). Yet, relief under Rule 60(b)(6) may be granted only in "extraordinary circumstances" and is limited to circumstances when the reason for relief from judgment falls outside the scope of enumerated reasons provided in Rule 60(b)(1)-(5). *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011). In addition, because Rule 60(b)(6) is a civil rule, it is generally an inappropriate means to assert a collateral attack on a criminal conviction or sentence. *See United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003); *United States v. McRae*, 793 F.3d 392, 397 (4th Cir. 2015) (describing an example of a "true Rule 60(b) motion" as one "that challenges some

---

[2] In his Motion for Relief from Judgment, Defendant references "FRCP 60(b)(6)." Because Rule 60(b) of the Federal Rules of Criminal Procedure pertains to victims' rights, not at issue here, the court analyzes Defendant's "Rule 60(b)(6) Motion" under the Federal Rules of Civil Procedure.

[3] Provided in full, Federal Rule of Civil Procedure 60(b) allows a court to grant relief from final judgment based on:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

defect in the integrity of [a] federal habeas proceeding[]"); *see also United States v. Mosavi*, 138 F.3d 1365, 1366 (11th Cir. 1998) ("Rule 60(b) simply does not provide for relief from judgment in a criminal case."). The court views this Motion as a collateral challenge to Defendant's sentence because Defendant seeks relief from his sentence. Therefore, this court will construe Defendant's Motion for Relief from Judgment as a 28 U.S.C. § 2255 motion.

Under 28 U.S.C. § 2255, the court may vacate, set aside, or correct a criminal defendant's sentence upon a finding that "the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." However, in his plea agreement, Defendant waived his right to challenge his conviction or sentence *except* to claim ineffective assistance of counsel, prosecutorial misconduct, or future changes in the law that would affect his sentence. [*See* ECF No. 738 ¶ 14.]

Courts will accept a waiver precluding a defendant from appealing a specific issue "if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver." *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012) (quoting *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005)). "An appellate waiver is valid if the defendant's agreement to the waiver was knowing and intelligent." *Thornsbury*, 670 F.3d at 537. "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the [plea] colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid," *id*., "even though the defendant may not know the *specific detailed* consequences of invoking it," *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (emphasis in original). Here, Defendant does not contend that he unknowingly or unintelligently waived the collateral attack waiver in his plea agreement or that the court did not ensure that Defendant

5

understood the terms of his plea—including the appeal waiver—during his plea colloquy. He also does not claim that his claims exceed the scope of the waiver. Consequently, the appeal waiver in Defendant's plea agreement bars Defendant's request for relief from judgment.

### B. Defendant's request for relief lacks merit.

Defendant's request for the court to amend his PSR lacks merit because he is, in fact, ineligible for any early release benefit in connection with the RDAP program. 18 U.S.C. § 3621(e)(2)(B) provides that prisoners who complete the RDAP program may be eligible for a sentence reduction of up to one year. However, Congress delegated the authority to the Federal Bureau of Prisons (BOP) to make determinations of which inmates qualified for this sentence reduction incentive, which the BOP codified in 28 C.F.R. § 550.55(b)(4) and (b)(5). In relevant part, the BOP precludes inmates from receiving early relief if their current conviction involved the carrying, possession, or use of a firearm. 28 C.F.R. § 550.55(b)(5)(ii).

In Defendant's case, the two-level enhancement for possession of a firearm "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A). As described above, the Probation Office factored in the firearm enhancement when calculating Defendant's sentence based on evidence that Defendant was observed in possession of a firearm during the conspiracy. [*See* ECF No. 1003 at 4.] Defendant initially objected to the enhancement [ECF No. 867 at 10-11], but he withdrew his objection after reaching a separate agreement with the government for downward variances. [ECF No. 1003 at 4-5]. Therefore, Defendant never proved the "clear improbab[ility]" that the firearm was connected to the drug conspiracy, and the court accepted the government's variances. To the extent Defendant seeks to reassert a challenge to the firearm enhancement, the withdrawal of his objection in exchange for a favorable resolution with the government amounts to a waiver

of the issue. Thus, it precludes him from challenging it on appeal. *See United States v. Kiser*, 322 F. App'x 293, 294 (4th Cir. 2009).

To support his position, Defendant asserts that "district courts across the country" have granted relief to defendants seeking sentence reduction incentives and amended their PSRs to remove provisions that disqualify their eligibility for such benefits from prison rehabilitation programs like RDAP. He notes that at least one district court in the Eastern District of Kentucky has removed a defendant's disqualifying entry from her PSR to allow the defendant to benefit from the RDAP early release credit. [ECF No. 1310 at 2-3 (citing *United States v. Fraley*, No. 05-cr-188-KSF, 2007 WL 1876455 (E.D. Ky. June 27, 2007).] In *Fraley*, the court retroactively amended defendant Fraley's PSR to remove a two-level firearm enhancement because the record demonstrated that the district court and the government "clear[ly]" intended that Fraley would be eligible for a credit of up to one year off her sentence upon successful completion of the RDAP program. *Fraley*, 2007 WL 1876455, at *5.

*Fraley* holds no influence here. As the government states, *Fraley* has no binding authority on Defendant's case. Furthermore, unlike Defendant's purported claim that "district courts across the country" have followed *Fraley*'s direction, this court's review of the cases that cite *Fraley* reveals just the opposite. Other district courts have distinguished the *Fraley* decision and declined to apply its reasoning. *See, e.g.*, *Braggs v. United States*, No. 3:16-cr-00209, 2020 WL 2115650, at *2-3 (S.D.W. Va. Mar. 11, 2020) (collecting cases). One such example, *Braggs v. United States*, echoed nearly identical arguments to those that Defendant raises here. The court in *Braggs* considered a *pro se* litigant's request to the court to remove the two-level firearm enhancement from his PSR so that he would be eligible for early release after completing the RDAP program. *Braggs*, 2020 WL 2115650, at *2. The court rejected Braggs' assertions, which echo Defendant's

own, that "the Court and the government do not object to, and indeed likely intend for" him to be eligible for early release after participation in the RDAP program. *Id*. at *6. Unlike the "unique set of circumstances" in *Fraley*, the government objected to Braggs' early release, and neither the court nor the government expressed their intent for Braggs to be released early. *Id*. The court ultimately held that Braggs asserted no basis for relief. *Id*.

The circumstances here mirror those in *Braggs*. No agreement existed between the court, government, and Defendant at sentencing that reflects the parties' "collective intention" for Defendant to be eligible for early release credit after successfully completing the RDAP program. The government here emphatically objects to Defendant's Motion, stating that Defendant "should not be entitled to the benefit of an early release in light of his possession of a firearm during his commission of the offense of conviction." [ECF No. 1311 at 2.] In addition, the record does not reflect the court intended for Defendant to receive sentencing relief when it recommended him to the RDAP program. [*See* ECF No. 1057 at 2.] The court often recommends to BOP that a defendant be allowed to participate in RDAP if the defendant qualifies for the program. With that recommendation, however, the court never intends to grant early release or a sentence credit to someone ineligible to receive such benefits. Finally, the discretion to decide whether Defendant is eligible for early release, including whether a prisoner whose offense involved the possession of a firearm should be eligible for early release, lies with the Director of the BOP. *See Lopez v. Davis*, 531 U.S. 230, 241, 243-44 (2001); 18 U.S.C. § 3621(e)(2); 28 C.F.R. § 550.55(b)(5)(ii). Because Defendant asserts no other cognizable claim upon which relief can be granted, the court **DENIES** Defendant's Motion for Relief from Judgment [ECF No. 1301].

## II.     Compassionate Release

In addition to his request for relief from judgment, Defendant also makes a *pro se* motion for compassionate release pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A). [ECF No. 1285.] Defendant asserts he is eligible for compassionate release from prison because his obesity, the emergence of the highly contagious Omicron variant, conditions at Fort Dix FCI, and the known and unknown effects of COVID-19 constitute extraordinary and compelling reasons for his release. [ECF No. 1285 at 5.] The government responded to Defendant's motion, contending Defendant has failed to meet his burden of proving compassionate release is warranted under the First Step Act and asks this court to deny Defendant's motion with prejudice. [ECF No. 1331.] To date, Defendant has not replied to the government's response.

### A.     Sentence Reduction Under 18 U.S.C. 3582(c)(1)(A)

The court's standard of review in determining compassionate release is guided by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), as well as the administrative exhaustion requirements of 18 U.S.C. § 3553. Courts generally lack jurisdiction to modify a defendant's sentence once it has been imposed. 18 U.S.C. § 3582; *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). Because a defendant's sentence of imprisonment is final, the court may only act to modify a term of imprisonment in limited circumstances. 18 U.S.C. § 3582; *See United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020). One such example of a limited circumstance authorizing the court to modify a sentence is under § 3582(c)(1)(A), commonly known as the Compassionate Release statute. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020). The compassionate release provision of the First Step Act grants the court express authority to modify a defendant's sentence of imprisonment if the court (1) finds extraordinary and compelling reasons warrant a sentence reduction and (2) then considers the § 3553(a) factors and determines the requested reduction

complies with applicable policy statements issued by the Sentencing Commission. *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

> **B.     Administrative Exhaustion Requirement under 18 U.S.C. 3582(c)(1)(A) and Policy Statements**

The First Step Act broadened access to compassionate release under the provisions of 18 U.S.C. § 3582(c)(1)(A). *See McCoy*, 981 F.3d at 274. Incarcerated inmates may now file their own motions for compassionate release, but only be after they have exhausted administrative remedies. *Kibble*, 992 F.3d at 330. To satisfy the exhaustion requirement, a defendant must first ask the BOP to bring a sentence reduction motion on his behalf and either fully exhaust all administrative rights to appeal the BOP's decision or wait thirty days from the date of his initial request to file a motion in the district court. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021). Defendant made his initial reduction in sentence request to the warden at Fort Dix FCI on January 1, 2021. [ECF No. 1285-2 at 33.] To date, Defendant has received no response from the warden at Fort Dix FCI, and the government concedes Defendant has satisfied the administrative exhaustion requirements. The court is satisfied the exhaustion requirement is met. *Muhammad*, 16 F.4th at 131.

There currently are no policy statements that apply to a compassionate release motion filed by a defendant. *Kibble*, 992 F.3d at 330-31 (citing *McCoy*, 981 F.3d at 284). Accordingly, the court must next determine whether Defendant has shown extraordinary and compelling reasons for a sentence reduction and, if so, the court must then consider the § 3553(a) factors in exercising its discretion. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

> **C.     Extraordinary and Compelling Circumstances in Coronavirus Cases**

Defendant moves for compassionate release pursuant to Section 3582(c)(1)(A), asking this Court to reduce his sentence of imprisonment and order his release. Defendant asserts he should

be released because his underlying medical condition of obesity renders him uniquely vulnerable to COVID-19 and the resulting health risks. [ECF No. 1285 at 5-6.] Defendant further contends that the emergence of the Omicron variant combined with the questionable efficacy of the vaccinations and his conditions of confinement at Fort Dix FCI increase his risk of severe re-infection. *Id*. at 9-19. Defendant also argues that the long-term effects, known and unknown, of COVID-19 underscore the compelling basis for his release. *Id*. at 19-21. Defendant maintains he is particularly susceptible to serious risks and complications from COVID-19 and his susceptibility constitutes an extraordinary and compelling reason for compassionate release under Section 3582(c)(1)(A)(i). *Id*.

The Fourth Circuit has helped explain what constitutes extraordinary and compelling reasons. While the Federal Sentencing Guidelines issued by the Sentencing Commission are inapplicable to defendant-filed motions under § 3582, a district court may consider the guidelines to guide inquiry of what constitutes an "extraordinary and compelling circumstance" justifying sentence reduction. *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). When a defendant relies on circumstances covered by U.S.S.G. §1B1.13 as the basis for his compassionate release motion, the court should consider the policy statement as guidance to help determine whether the defendant's circumstances constitute extraordinary and compelling reasons. *See High*, 997 F.3d at 186 ("So while U.S.S.G. § 1B1.13 is not applicable to *defendant-filed* motions under § 3582(c), it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might reasonably believe … the term 'extraordinary and compelling reasons' will be defined the same for defendant-filed motions.")(emphasis in original). This court is "empowered … to consider any extraordinary and compelling reason for release that a defendant might raise,"

including the circumstances outlined in U.S.S.G. § 1B1.13. *McCoy*, 981 F.3d at 284 (*quoting United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Defendant contends extraordinary and compelling reasons for compassionate release exist here based on his medical condition, specifically, obesity; new COVID-19 variants, including the Omicron variant; conditions at Fort Dix FCI, his place of confinement; and the known and unknown long-term effects of Covid-19 infection. [ECF No. 1285 at 5-20.] The court reviews each of these assertions below.

### 1. Obesity

Obesity is included in the CDC's list of conditions which increase the risk of severe COVID-19 infection.[4] An individual with a Body Mass Index (BMI) greater than 30 but less than 40 is considered obese.[5] Defendant is thirty-nine years old and has produced his medical records showing he meets the CDC's criteria of obesity. [*See* ECF No. 1285-2.] The government challenges Defendant's assertions, arguing the medical records Defendant provided fail to corroborate his claims. [ECF No. 1331.] However, the court finds Defendant's medical records do in fact corroborate his assertions of obesity: On August 21, 2021, Defendant's weight was recorded at 220 pounds. [ECF No. 1285-2 at 31.] On September 21, 2021, Defendant was 5'10. [ECF No. 1285-2 at 17.] Defendant's height and weight taken together mean his BMI is 31.6.[6] *See United States v. Waugh-Hixon*, 19-cr-137-PWG, 2021 WL 4750713, at *3 (D. Md. October 12, 2021)

---

[4] *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 5, 2023).
[5] *Id*.
[6] Adult BMI Calculator, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited January 5, 2023).

12

(finding that a BMI of 30 places a defendant "in the range of BMI susceptibility level recommended by the CDC").

This court finds Defendant's health condition of obesity alone, however, does not make him particularly vulnerable to complications from COVID-19. Despite his underlying condition and the presence of COVID-19 at Fort Dix FCI, Defendant has contracted COVID-19 with no severe complications. [ECF No. 1285-2 at 10-14 (noting although Defendant's critical result was "Positive," he was nonetheless "Asymptomatic").] He is also vaccinated, which mitigates his risk of severe COVID-19 infection. *Id.* at 28-29. Furthermore, between August 21, 2021, and September 21, 2021, Defendant lost 10 pounds, bringing his BMI down to 30.1.[7] *Id.* at 17, 31.

### 2. New COVID-19 Variants

Along with obesity, Defendant argues the emergence of new COVID-19 variants is an extraordinary and compelling reason for this court to grant him compassionate release. Defendant cites several sources addressing the decreased efficacy of the vaccine against new COVID-19 strains. *See* Dhruv Khullar, The Uncertainties of the Omicron Variant, The New Yorker, Nov. 30, 2021; Louis Jacobson, Omicron and Other Coronavirus Variants: What You Need to Know, Politifact, Nov. 29, 2021. [ECF No. 1285 at 18.] While the court recognizes the rapidly changing nature of novel viruses such as COVID-19, it cannot predict the emergence of new strains nor their impact on the COVID-19 pandemic. It is not within this court's purview to evaluate the requisite effects and risks of new strains on individuals similarly situated to Defendant. Also, neither party has produced any evidence on whether Defendant has received a booster shot, which could mitigate the effects of contracting a new COVID-19 variant. *See* Dani Blum, What to Know About

---

[7] Adult BMI Calculator, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited January 5, 2023).

the Bivalent Booster Shots, The New York Times, Aug. 31, 2022 (updated Dec. 15, 2022). Therefore, while Defendant raises relevant points regarding vaccine efficacy, the ultimate point for the court to consider is whether vaccine efficacy and the unknown effects of COVID-19 constitute extraordinary and compelling reasons justifying his release. This court finds it does not.

### 3. Conditions of Confinement at Fort Dix FCI

Defendant further contends that conditions of confinement at Fort Dix FCI favor granting his motion for compassionate release. [ECF No. 1285 at 9-17.] Defendant argues "the conditions of confinement during the COVID-19 pandemic have substantially affected his lack of obtaining vocational, education, medical, and recreational rehabilitation." *Id.* at 9. Despite Defendant's assertion that COVID-19 has made his "imprisonment far more grueling" than this court could have anticipated, *id.* (*citing United States v. Robles,* C/A No. 08-cr-114-PAE, U.S. Dist. Lexis 150046 (S.D.N.Y Aug. 10, 2021)), he has failed to demonstrate the risk of infection at the Fort Dix FCI facility exceeds the risk of infection outside the facility.

While this court is sympathetic to the effects of heightened restrictions on incarcerated inmates, the restrictions and generalized risk of contracting COVID-19 are not so unique to Fort Dix FCI as to justify finding extraordinary and compelling reasons justifying Defendant's release. At the time Defendant's motion was filed, Defendant alleged Fort Dix FCI had "numerous active cases of the Omicron variant." [ECF No. 1285 at 17.] However, at the time the Government responded, the Government noted there were no inmates testing positive for COVID-19. As of the date of this Order, eight inmates and no staff members are listed as positive for COVID-19 at the

facility.[8] Fort Dix FCI has implemented moderate modifications at the facility and to date has fully inoculated 3325 inmates.[9]

### 4. The Known and Unknown Effects of COVID-19

Along with the reasons listed above, Defendant asserts that "[t]he lo[n]g-term effects of an infection with COVID-19 are reasons in themselves for 'extraordinary and compelling circumstances.'" [ECF No. 1285 at 20.] Defendant cites an article from Nature Magazine stating "beyond the first 30 days of illness, people with Covid-19 exhibit a higher risk of death and use of health resources." Ziyad Al-Aly, Yan Xie & Benjamin Bowe, High-dimensional Characterization of Post-acute Sequelae of COVID-19, Nature, Vol. 594, 259-264 (June 10, 2021).

While the court agrees the long-term effects of this virus are not yet known, Defendant fails to establish he is particularly vulnerable to long-term effects of Covid-19 infection. Defendant previously contracted COVID-19 but offers no evidence showing any adverse health effects were exacerbated by his medical condition of obesity. [ECF No. 1285 at 14 (noting Defendant was positive for Covid yet "Asymptomatic").] In the absence of evidence Defendant's medical condition of obesity adversely impacted his recovery from COVID-19 infection or worsened his health condition after the fact, this court concludes Defendant has failed to show that the known and unknown effects of COVID-19 constitute extraordinary and compelling reasons justifying his compassionate release.

After considering the four reasons put forward by Defendant, the court concludes he has not shown an extraordinary and compelling reason for his release. Even if Defendant did show that

---

[8] *COVID-19*, https://www.bop.gov/coronavirus/ (last visited January 4, 2023) (Under "COVID-19 Cases").
[9] *COVID-19*, https://www.bop.gov/coronavirus/ (last visited January 4, 2023) (Under "Modified Operational Levels" and "COVID-19 Vaccine Implementation").

15

these conditions were extraordinary and compelling reasons justifying his compassionate release, an analysis under 18 U.S.C. § 3553(a) also counsels against his release.

### III.     Factors Under § 3553(a)

A review of the § 3553(a) factors shows a reduction in Defendant's sentence is not warranted in this case. Defendant was responsible for distributing over 100 grams of cocaine base, often called "crack," and over 230 grams of powder cocaine. [ECF No. 1003 at 4.] According to a statement made by a confidential source who purchased crack cocaine from Defendant, Defendant was observed in possession of a firearm during the times relevant to his criminal conduct. *Id*. He was intercepted on approximately 106 calls conducting many purchases of drugs. *Id*. The record also reflects Defendant has an extensive criminal history, beginning in the year 2000 and involving multiple burglaries as well as drug distribution and trafficking convictions. *Id*. Prior run ins with law enforcement have failed to deter the defendant from engaging in criminal conduct, and the risk of recidivism was a consideration when the court imposed the sentence of 57 months.

The Defendant's actions also demonstrate disrespect for the law and the safety of others. Defendant's conduct distributing drugs was extensive and serious, and the sentence imposed is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence. The court is convinced compassionate release would neither dissuade Defendant from committing further offenses nor dissuade others from committing similar offenses.

Furthermore, as part of an agreement with the government, Defendant received a favorable downward sentencing variance, resulting in an adjusted guideline range of 57 to 71 months under the 2018 version of the Sentencing Guidelines. [ECF No. 1003 at 4-5.]  Contrary to Defendant's

16

assertion that "[g]ranting a sentence reduction … would not cause a sentencing disparity," ECF No. 1285 at 22, a reduction would frustrate the Sentencing Commission's goals of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. After carefully considering the § 3553(a)factors, the court concludes those factors do not warrant compassionate release.

The court notes, despite the colloquial term "compassionate release," it has the authority to *reduce* Defendant's term of imprisonment, even if it decides against *releasing* the Defendant. See *Brooker*, 976 F.3d at 237 (noting § 3582(c)(1)(A) "speaks of sentence reductions" and grants a district court authority to "reduce but not eliminate a defendant's prison sentence"). Defendant has served 17 months of his sentence, and he has 40 months remaining on his sentence, followed by a term of supervised release of four years. *See Kibble*, 992 F.3d at 331 (noting the district court is entitled to consider how long the defendant has served as "one factor in the § 3553(a) analysis"); *McCoy*, 981 F.3d at 286 (noting the district court's decisions resulted from an "individualized assessment" of each defendant's sentence that considered, among other things, the significant sentences they had served). A reduction is not warranted, however.

The court recognizes Defendant has taken some positive steps while federally incarcerated, including participating in the RDAP program, discussed in Part I above. *See McCoy*, 981 F.3d at 286, 289 (noting a district court can consider post-sentence conduct in its compassionate release analysis); *see also Pepper v. United States*, 131 S.Ct. 1229, 1241, 1242 (2011) (emphasizing post-sentence rehabilitation because "there would seem to be no better evidence than a defendant's post incarceration conduct" and stating "[p]ost-sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater, than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)"); *United*

17

*States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019) (holding, in weighing sentence reduction, district court must give weight to past transgressions as well as the redemptive measures the defendant has taken). The court encourages Defendant to continue these efforts to enhance his chances of success upon release.

The court recognizes the COVID-19 pandemic has affected defendants across the nation in many ways. The court has considered Defendant's obesity in the context of the current situation at Fort Dix FCI and is mindful Defendant is at increased risk should he contract COVID-19, especially since he is incarcerated. Yet his prison conditions and current health status simply do not warrant compassionate release. Finally, the court has considered Defendant's release plan, ECF No. 1285-1. Defendant's plan includes living with his niece in Myrtle Beach, located in Horry County, South Carolina upon release, but includes no employment prospects or other resources. *Id.*

The court concludes compassionate release at this time would disserve the sentencing goals—most significantly, the need for the sentence imposed to reflect the need for just punishment and the need to protect the public from future crimes of Defendant. It would also minimize the effects of Defendant's crime and the seriousness of his offense. Although this court has the discretion to modify Defendant's sentence, the fifty-seven-month sentence remains appropriate as it reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment. Equally true, the sentence affords an adequate deterrence to criminal conduct and protects the public from further crimes of Defendant. A sentence of 57 months remains sufficient but not greater than necessary to comply with the purposes of the § 3553(a) factors. Reconsideration of these factors counsels against compassionate release, and Defendant's Motion for Compassionate Release, ECF No. 1285, is **DENIED**.

## IV.     Appointment of Counsel

Defendant moves for appointment of counsel because he cannot afford counsel, has limited knowledge and legal resources in prison to advocate the "complex" issues in his case, and to "best" serve the ends of justice. [ECF No. 1284 at 1.]  A "criminal defendant has no right to counsel beyond his first appeal." *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 756 (1991)). Still, a federal court can appoint counsel for an indigent person if it "determines that the interests of justice so require." 18 U.S.C. § 3006(a)(2)(B); 28 U.S.C. §§ 1915(e)(1), 2255(g); *see, e.g.*, *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). However, the "interests of justice" "mandate the [court's] appointment of counsel in certain postconviction proceedings" only in "exceptional" circumstances. *Legree*, 205 F.3d at 730 (*citing Gagnon v. Scarpelli*, 411 U.S. 778, 788 (1973)). To determine "whether such circumstances exist in any particular case," the court should first determine whether "it is apparent . . . that a *pro se* litigant has a colorable claim," one where discovery is necessary if the matter proceeds to an evidentiary hearing, and, if so, whether the litigant "lacks the capacity to present" his claim. *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978); see also Rules 6(a) and 8(c) of Rules Governing § 2255 Proceedings for the United States District Courts.

As discussed above, Defendant has no viable claim for relief from judgment or compassionate release that would warrant an appointment of counsel for further judicial proceedings. *See* Fed. R. Crim. P. 43(c)(4) (stating that a judge need not hold a hearing when considering a motion under 18 U.S.C. § 3582(c)); 28 U.S.C. § 2255(b) (no hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Based on the record before the court, Defendant's request for relief from judgment is procedurally barred by his plea agreement's appeal waiver and lacks substantive merit.

Moreover, despite contending that he has limited knowledge and legal resources to sufficiently represent himself, Defendant has established through his filings that he can assert his claims for relief without the assistance of counsel. The same day he moved to Appoint Counsel, ECF No. 1284, he also filed the Motion for Compassionate Release, ECF No. 1285. Shortly thereafter, on March 4, 2022, he filed a Motion for Relief from Judgment, ECF No. 1301, and, subsequently, on March 21, 2022, a supplemental Letter Re: Drug Benefits, ECF No. 1310. The court, therefore, finds that Defendant can proceed—and has proceeded—with his claims *pro se*. Accordingly, the court **DENIES** Defendant's Motion to Appoint Counsel.

## CONCLUSION

For these reasons, the court **DENIES** Defendant's Motion for Relief from Judgment, ECF No. 1301, **DENIES** his Motion for Compassionate Release, ECF No. 1285, and finally **DENIES** his Motion to Appoint Counsel, ECF No. 1284.

s/ Sherri A. Lydon_____
The Honorable Sherri A. Lydon
United States District Judge

Columbia, South Carolina
January 5, 2023